IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| DONNA L. MCKIE, | ) Civil Action No. 3:05-2654-CMC-JRM |
| Plaintiff, | ) |
| vs. | ) |
| WACHOVIA CORPORATION, | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

    Plaintiff, Donna McKie ("McKie"), filed this action on September 14, 2005. She alleges a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").[1] Defendant, Wachovia Corporation ("Wachovia")[2] filed a motion for summary judgment on March 24, 2006. McKie, because she is proceeding pro se, was advised on March 29, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of her complaint. McKie filed a memorandum in opposition to summary judgment on May 2, 2006. Wachovia filed a reply on May 11, 2006, and McKie filed an untimely sur reply[3] on June 9, 2006.

---

   [1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

   [2]Counsel for Defendant provides that the proper Defendant is "Wachovia Mortgage Corporation." Defendant's Motion for Summary Judgment at 1.

   [3]See Local Rule 7.07 (replies shall be filed within five days of service of the response).

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations

to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. McKie, a black female, was hired by Wachovia as a Mortgage Loan Processor in the Columbia, South Carolina Service Center in July 2001.[4] Plaintiff's Dep. 44, 46-47.

2. McKie received a performance evaluation for her work in 2001 and received a merit salary increase in conjunction with her evaluation. Plaintiff's Dep. 48.

3. McKie first worked as a loan processor for the wealth management team. She was moved to the Triad mortgage loan team sometime between 2002 and 2003. Plaintiff's Dep. 47, 53.

4. On approximately April 1, 2003, McKie received her next performance evaluation (for the year 2002). Bobbie Joe Ruff ("Ruff"), a white female, was McKie's Service Coordinator (supervisor) at the time. Ruff met with McKie to discuss her review. McKie received an

---

[4] Wachovia provides that McKie previously worked for Wachovia Bank from approximately 1982 to 1991. Defendant's Motion for Summary Judgment at 2.

      overall rating of 3 or "Fully Meets Expectations" for the 2002 evaluation year and she received a raise in April 2003 in conjunction with the performance evaluation. Plaintiff's Dep. 49, 51-52, 141-142; Defendant's Motion for Summary Judgment, Ex. B.

5. In approximately May 2003, Beth Bates ("Bates"), a white female, became the Sales & Service Coordinator for the Triad and Palmetto teams and replaced Ruff as McKie's direct supervisor. Plaintiff's Dep. 53-54; Bates Decl. ¶ 1-2.

6. In August 2003, McKie took a short-term disability leave of absence because of "undue stress." Complaint at 6.

7. During the summer of 2003, Bates began receiving complaints about McKie's processing of files. Bates spoke to McKie about the complaints on August 18, 2003, but no formal or written disciplinary action was issued. Bates Decl. ¶ 3, 5, and Ex. 1 and Ex. 1; see also Plaintiff's Dep. 75-76.

8. McKie states that Bates informed her that two white loan officers told Bates that they liked Bobbie Lowman (a white displaced/temporary employee)[5] but they did not like McKie. Complaint, at 6.

9. McKie spoke with one of the loan officers, Renee Laws, who denied making the comment. Complaint at 6.

10. In September 2003, McKie requested a meeting to discuss issues she was having with Bates. Lori Pressley ("Pressley"), a Human Resources Business Partner, and Sheri Ledbetter, a

---

[5]McKie claims that Lowman had worked for Wachovia for over twenty years in Human Resources; was displaced in December 2002, worked as a temporary loan processor at the time of the alleged incidents; was offered a permanent job, but declined it because it would have precluded her from collecting severance pay; and at the time her severance pay ended, management had put a freeze on hiring. Complaint at 6-7.

>   Retail Sales and Service Executive, met with McKie. McKie indicated to Pressley and Ledbetter that she was displeased with the way Bates was treating her with regard to her performance and that she did not like working for Bates. Pressley and Ledbetter asked McKie what could be done to alleviate her concerns, and McKie requested to be transferred to another team. They told McKie that they did not have authority to transfer her to another team, any transfer would have to be based on the Service Center's business needs, and they would discuss her request with the Site Facility Manager. McKie was told that if she was not satisfied with the meeting or had any concerns, she should contact her Human Resources Advisor. Pressley and Ledbetter did not get back in touch with McKie and McKie did not contact them again regarding her request to be transferred. Plaintiff's Dep. 76-77, 91, 103-105, 113; Pressley Decl. ¶ 2-4, 6-7.

11. Wachovia contends that McKie was not transferred immediately because there was no business justification. The mortgage loan processing teams in the Columbia Service Center then underwent a restructuring in early 2004. See Bates Decl. ¶ 7; Pressley Decl. ¶ 5; Jan Smith Decl. ¶ 3.

12. In February 2004, Wachovia Mortgage displaced thirteen full-time permanent employees due to low volume. All of the temporary employees except Lowman were displaced. Complaint at 6.

13. Near the end of February 2004, Bates and Jan Smith ("Smith"), the Sales and Service Coordinator for the Columbia and Upstate teams, met with McKie to discuss the opportunity to change teams. They told McKie that the center was restructuring and the Columbia team was in need of additional loan processors. On approximately March 1, 2004, McKie

5

       transferred from the Triad team to the Columbia team and Smith became McKie's direct supervisor. Plaintiff's Dep. 108; Bates Decl. ¶ 7-8; Smith Decl. ¶ 3-4.

14. Annual performance evaluations for loan processors for the year 2003 were completed in early 2004. Each of the sales and service coordinators at the Columbia Service Center, along with their manager Nate Stevens, jointly determined the overall rating of each loan processor. The sales and service coordinators determined that McKie should receive an overall rating of 3 or "Fully Meets Expectations." Bates prepared the specific comments for McKie's evaluation since Bates had been McKie's supervisor for much of 2003. Bates Decl. ¶ 9-10; Smith Decl. ¶ 5.

15. Bates met with McKie on March 31, 2004 to present McKie's performance evaluation. McKie did not make any comments about the evaluation or ask any questions during the meeting. She signed and dated the evaluation. On April 1, 2004, McKie received a merit salary increase in connection with her 2003 performance evaluation. Plaintiff's Dep. 116-119; Bates Decl. 10-12 and Ex. 3.

16. Later in April, McKie indicated to Smith that she was not pleased with her 2003 performance evaluation based on ratings she received in two subcategories of 2 or "Basically Meets Expectations." Smith explained that the overall rating indicated McKie fully met expectations and that all the sales and service coordinators had input into the overall ratings. She advised McKie to discuss the evaluation with Human Resources if she was still concerned. Smith Decl. ¶ 6.

17. On April 15, 2004, McKie sent an email to a co-worker and Smith stating that she was going home sick. In the e-mail, McKie wrote that no one would help her regarding her annual

review. She remained out of work on vacation leave and then short-term disability until July 26, 2004. Smith Decl. ¶ 8 and Ex. 1; Plaintiff's Dep. 151-152, 189.

18. On April 22, 2004, while out on leave, McKie spoke with Senior Human Resources Advisor Janet Sammarco ("Sammarco"). She complained about Bates and her performance review. Additionally, between the time she went out on leave and July 26, 2004, McKie spoke to or corresponded with a number of Wachovia Human Resources and Employee Relations professionals, including Sammarco, Ruth Drucker ("Drucker"), Ronald Tomaszewski, and Employee Relations Manager Glen Chambers ("Chambers"), about her displeasure with her performance evaluation. Drucker conducted an investigation of McKie's concerns regarding her performance evaluation and concluded that McKie's performance rating and the information contained in her review were appropriate. On July 26, 2004, Chambers wrote McKie regarding her concerns, advised her that he completed an independent review of her complaint and Drucker's investigation, and indicated he agreed with Drucker's findings. Plaintiff's Dep. 153-154, 161, 175-176; Defendant's Motion for Summary Judgment, Exs. F, G, and H.

19. In August 2004, Lowman was promoted to a Performance Consultant position in the Mortgage Department. Complaint at 7.

20. On July 26, 2004, after receiving a week's extension of leave in addition to her approved medical leave, McKie returned to work. Shortly after arriving at work, McKie submitted her resignation to Smith, effective July 26, 2004. McKie's email contained no reason for her resignation. Plaintiff's Dep. 184, 189-190; Smith Decl. ¶ 9 and Ex. 2.

21.     In January 2005, McKie filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"). In her Charge, McKie alleged that she was constructively discharged, subjected to harassment, and involuntarily transferred. Defendant's Reply Memorandum, Ex. A.[6]

DISCUSSION

McKie claims that Wachovia subjected her to disparate treatment, harassed her based on her race, and constructively discharged her.[7] Wachovia contends that it is entitled to summary judgment because: (1) McKie cannot establish a prima facie case of race discrimination under Title VII as she fails to show that she was subjected to an adverse employment action; (2) McKie fails to establish a prima facie case of constructive discharge; and (3) she cannot establish a claim for hostile work environment/harassment based on race. In her opposition memorandum, McKie claims that Wachovia's motion for summary judgment should be denied because Wachovia submitted "false statements" to SCHAC and this Court consisting of the dates of Lowman's employment as a temporary worker, Lowman's dates of employment as a Wachovia permanent employee, and information as to whether loan processors were displaced in February 2004.[8] She has, however, not

---

[6] In its reply memorandum, Wachovia contends that some of McKie's claims are time barred.

[7] To the extent that McKie is attempting to assert a failure to promote claim as to Lowman's position(s), her claim(s) fail because McKie has not shown that she "applied" for any such position. See Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 121 (4th Cir. 1991)(In order to establish a prima facie case of discriminatory failure to promote (in the absence of direct evidence), a plaintiff is required to prove that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position in favor of someone not a member of a protected group under circumstances giving rise to an inference of unlawful discrimination.).

[8] Wachovia contends that any inconsistency or incorrect statement was inadvertent and was not any effort to cover up any alleged wrongdoing. The company also contends that Lowman's
(continued...)

8

disputed that the facts provided by Wachovia in its motion for summary judgment and fails to show that the facts in dispute affect her claims.[9]

    A.    <u>Disparate Treatment</u>

In her complaint, McKie appears to contend that she was subjected to disparate treatment based on her race as to Bates' criticism of her performance, the failure to transfer her in September 2003, her March 2004 performance appraisal, and her transfer to the Columbia team. Wachovia contends that McKie fails to establish a prima facie case of discrimination because she did not suffer an "adverse employment action."

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...."  42 U.S.C. § 2000e-2(a)(1).  In a disparate treatment case, a plaintiff must prove that "but for" his race he would not have been subjected to an adverse employment action. <u>Holmes v. Bevilacqua</u>, 794 F.2d 142 (4th Cir. 1986).  A plaintiff can prove defendant's motive to discriminate by two methods. First, the "plaintiff may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. In the

---

[8](...continued)
employment status and the status of displaced loan processors are irrelevant to McKie's case. Wachovia's Reply at 2-3.

[9]In her memorandum in opposition to summary judgment, McKie also appears to be challenging some of Wachovia's answers to her discovery requests. Discovery ended in this action on March 9, 2006.  <u>See</u> November 9, 2005 Scheduling Order.  To the extent that this is a motion to compel, it is untimely, as motions to compel must be filed within twenty days of the discovery response or, if no response is given, within twenty days after the response was due.  <u>See</u> Local Rule 37.01(A), DSC.

alternative, a plaintiff may resort to the judicially created scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981)." EEOC v. Clay Printing Company, 955 F.2d 936 (4th Cir. 1992).

In order to establish a prima facie case under the McDonnell Douglas scheme, a plaintiff must show that:

(1)     she is a member of a protected class;

(2)     she was qualified for her job and her job performance was satisfactory;

(3)     she was subjected to an adverse employment action; and

(4)     other employees who are not members of the protected class were treated more favorably.

See Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. 792, 802 & n.13 (1973). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

McKie fails to establish a prima facie case of disparate treatment because she has not shown that the alleged actions constituted adverse employment actions. In order to constitute an "adverse employment action," the action must "adversely affect 'the terms, conditions, or benefits' of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir.2004) (quoting Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir.2001).

10

McKie has not shown that any lack of transfer in September 2003 and/or her transfer in March 2004 were adverse employment actions. In her memorandum in opposition to summary judgment, McKie appears to argue that her transfer was adverse because Wachovia did not take her complaints about Bates seriously until there was low volume on the Triad team. McKie also appears to claim that she (and a coworker) were only transferred so that Wachovia could justify keeping Lowman employed. She also contends in her sur reply that her transfer was adverse because she had more work to perform on the Columbia team, she had files from the Triad team she needed to complete processing, she had to learn new regulations, and she had to learn to work with new loan officers. This, however, fail to amount to an adverse employment action. Importantly, McKie admits she received no decrease in pay, did not receive any write-up, and did not lose any benefits when she moved to the Columbia team. Plaintiff's Dep. 199-200; Bates Decl. Para. 11; Smith Decl. ¶ 4. McKie's title and job duties remained the same. Smith Decl. ¶ 4. McKie also admits that she did not oppose the transfer and looked at it as a new start. Plaintiff's Dep. 225. Additionally, McKie has not shown any significant detrimental effect from her remaining on the Triad team until March 2004.

Although a transfer accompanied by a materially adverse change has been found to be an adverse employment action, see Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132 (7th Cir. 1993), a transfer absent a reduction of salary, benefits and title is not considered actionable because there is no adverse employment action, see Harlston v. McDonnell Douglas Corp., 37 F.3d 379 (8th Cir. 1994). Additionally, "a mere refusal to grant a transfer as the employee wishes does not qualify as an adverse employment action unless the refusal had some significant detrimental effect on the

11

employee." Royster v. Costco Wholesale Corp., 378 F.Supp.2d 595 (M.D.N.C.,2005); see also Boone v. Goldin, 178 F.3d 253, 255-256 (4th Cir. 1999).[10]

McKie may be complaining that Lowman, a temporary white female employee, was not displaced at the time full-time black employees were displaced in February 2004, but she fails to show that this action was adverse to her, as she was not displaced. Further, she has no standing to assert any claims on behalf of others.[11] Although McKie claims that she was transferred so that Lowman could stay on the Triad team, she has not shown that her transfer was adverse and has presented no evidence to support her assertion. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998)(conclusory statements without evidentiary support are insufficient to create a genuine issue of fact); Brand v. N. C. Dep't of Crime Control and Public Safety, 352 F. Supp.2d 606, 614 (M.D.N.C. 2004)(granting summary judgment where the plaintiff presented only his own speculation about discrimination).

---

[10] Even if McKie could establish that a transfer or lack of transfer was an adverse employment action, Wachovia has articulated legitimate, nondiscriminatory reasons for its actions - that it does not permit moving employees into other groups unless there is a business reason to do so, there was no need to transfer McKie at the time she made her request, and when the Columbia Service Center underwent a restructuring in early 2004 which provided an opportunity to accommodate her request, Wachovia did so. Pressley Decl. ¶ 3 and 5; Bates Decl. ¶ 7; and Smith Decl. ¶ 3.

[11] See Laird v. Tatum, 408 U.S. 1 (1972); see also Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 482 (1982); Flast v. Cohen, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 506 (1972); and Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)(a prisoner cannot act as a "knight-errant" for others). Cf. Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)(a pro se prisoner cannot be an advocate for others in a class action); and McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn. 1-2 (10th Cir. 1991).

McKie also fails to show that any criticism of her performance by Bates in August 2003 or her performance review in March 2004 were adverse employment actions. The parties do not dispute that McKie was never written up or disciplined over her performance. Although McKie appears to dispute the ratings on some of the subparts of her evaluation and the comments contained therein, she does not dispute that she received an overall rating of 3 or fully meets expectations and that she received a raise in pay.

B.     Harassment

McKie claims that Bates had a "personal and racial vendetta against [McKie], which degraded into a hostile work environment." Complaint at 7. Wachovia contends that McKie fails to establish a hostile environment/harassment claim because she has not shown that the alleged harassment was "because of" her race or that the alleged harassment was so severe or pervasive to create an abusive working environment.

To prevail on a Title VII hostile environment claim based on race, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [race] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995) (en banc); see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004).

McKie fails to establish a hostile work environment/harassment claim because she has not shown that the alleged actions were based on her race. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280-282 (4th Cir. 2000); Nichols v. Caroline County Bd. of Educ., 123 F. Supp. 2d 320, 327 (D.

Md. 2000)(black plaintiff's assertion that white supervisors subjected him to adverse employment actions "because I am who I am" insufficient;" [t]he court cannot attribute a racial character to the disagreement and misunderstandings between the parties based merely on [plaintiff's] conjectural opinion."); Sharafeldin v. Maryland Dep't of Pub. Safety, 131 F.Supp.2d 730, 741-43 (D.Md. 2001); see also Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)(evidence of workplace disagreements between supervisors and subordinates concerning job duties and performance and of callous and insensitive treatment by supervisors is not sufficient to prove alleged harassment was based on plaintiff's race).

Additionally, McKie has not shown that Wachovia's alleged actions were sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment. In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22(1993)).  Among the circumstances examined are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. at 21.

Even if Bates' alleged comment that two loan officers liked Lowman and did not like McKie was based on race, McKie fails to show that this comment constituted severe or pervasive conduct. See Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793, 797 (4th Cir.1987), cert. denied,

484 U.S. 1042 (1988)("occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts of racial discrimination."); Snell v. Suffolk County., 782 F.2d 1094, 1103 (2d Cir. 1986) ("To establish a hostile atmosphere, ... plaintiffs must prove more than a few isolated incidents of racial enmity"); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) (no violation of Title VII from infrequent use of racial slurs).

  C.  Constructive Discharge

McKie alleges that she was constructively discharged. Wachovia argues that McKie voluntarily quit her job and contends that she has offered no evidence to support her claim of constructive discharge. The company further contends that McKie cannot demonstrate that it deliberately forced her to quit or that her working conditions were intolerable.

An employee is entitled to relief under Title VII for constructive discharge if an employer takes "deliberate" action to make the employee's working conditions "intolerable" in an effort to force the employee to resign. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995); Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). Deliberateness exists when the actions of the employer were "intended by the employer as an effort to force the employee to quit." Martin, 48 F.3d at 1354. Such intent can be inferred from actual or circumstantial evidence. See Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir.1984), cert. denied, 470 U.S. 1028 (1985). Deliberateness is also shown if company personnel know of the untenable conditions, and take no steps to remedy the situation. Id. "Intolerable" working conditions are assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 733 (4th

15

Cir. 1996), cert. denied, 520 U.S. 1116 (1997); EEOC v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992).

McKie fails to show that her working conditions were intolerable. See, e.g., Bristow, supra; Jones v. Greenville Hosp., 166 F.3d 1209, 1998 WL 823481 (4th Cir. Nov. 30, 1998)[Table](noting that an employee must present "extreme examples of employer abuse" to establish a constructive discharge claim; Shealy v. Winston, 929 F.2d 1009, 1013 (4th Cir. 1991)(Shealy's feeling that working a new position would be "awkward" did not support a claim for constructive discharge); Sparrow v. Piedmont Health Systems Agency, Inc., 593 F. Supp. 1107, 1118 (M.D.N.C. 1984)(resignation prompted by plaintiff's perception that she had suffered a "gross personal insult" and not because of discriminatory conduct did not support a claim of constructive discharge). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Carter v. Ball, 33 F.3d 450, 459 (4th Cir.1994) (citations omitted).

Further, McKie fails to show that Wachovia took deliberate actions to force her to resign. There is no indication that her salary, title, or benefits changed as a result of the alleged actions by Wachovia in transferring her, not transferring her, criticizing her performance, and evaluating her performance. See, e.g., Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23 (1st Cir. 1997)(maintenance of salary and benefits is a strong indication that employer did not intend employee to resign).

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 17) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

October 2, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

### Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
